## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN F. STEWART**, <br> 106 East Jefferson Street, <br> La Grange, KY 40031 <br><br> and <br><br> **ENCOMPASS DEVELOP,** <br> **DESIGN & CONSTRUCT, LLC,** <br> a Kentucky Limited Liability Company, <br> 106 East Jefferson Street, <br> La Grange, KY 40031 <br><br>   Plaintiffs, <br><br> v <br><br> **KATHLEEN SEBELIUS**, in her official <br> capacity as Secretary of the United States <br> Department of Health and Human Services; <br> 200 Independence Avenue, S.W. <br> Washington, D.C. 20201 <br><br> and <br><br> **THOMAS PEREZ**, in his official capacity as <br> Acting Secretary of the United States <br> Department of Labor; <br> 200 Constitution Ave., NW <br> Washington, DC 20210 <br><br> and <br><br> **JACOB LEW**, in his <br> official capacity as Secretary of the <br> United States Department of the Treasury; <br> 1500 Pennsylvania Avenue, NW <br> Washington, D.C. 20220 <br><br> and | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Docket No. _____

Hon. _____

**UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES**;
200 Constitution Ave., NW
Washington, DC 20210

and

**UNITED STATES DEPARTMENT OF
LABOR**
200 Constitution Ave., NW
Washington, DC 20210;

and

**UNITED STATES
DEPARTMENT OF THE TREASURY**,
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

   Defendants.

---

## VERIFIED COMPLAINT

---

PLAINTIFFS JOHN F. STEWART and ENCOMPASS DEVELOP, DESIGN &

CONSTRUCT, LLC., a Kentucky Limited Liability Company, by and through their undersigned

attorneys, for their complaint against the Defendants above-named, state and allege as follows:

## NATURE OF THE CASE

1.  This case is about religious freedom.  In this action, Plaintiffs seek declaratory and injunctive

    relief for the Defendants' violations of the Religious Freedom Restoration Act, 42 U.S.C. §

    2000bb *et seq.* (herein "RFRA"), and the First and Fifth Amendments to the United States

    Constitution caused by the actions of the Defendants in implementing the Patient Protection

    and Affordable Care Act (Pub. L. 111-148, March 23, 2010, 124 Stat. 1029) and the Health

    Care and Education Reconciliation Act (Pub. L. 111-152, March 30, 2010, 124 Stat. 1029)

(collectively known and herein referred to as the "Affordable Care Act"), in ways that force

Plaintiffs and thousands of other individuals to violate their deepest held religious beliefs.

2. Plaintiff John Stewart is the managing member and sole member of Plaintiff Encompass

Develop, Design & Construct, LLC, which is organized as a limited liability company.

3. Plaintiff Encompass is an architect, design and construction service firm headquartered in La

Grange, Kentucky, and is licensed to do business in numerous states and employs more than

fifty employees.

4. Plaintiffs provide group health insurance through Encompass to employees and their

dependents. Approximately 43 employees (and their dependents) of Plaintiff Encompass are

currently covered by this group health insurance plan.

5. John Stewart is a believing and practicing evangelical Christian and believes the Holy Bible

is the inspired, inerrant Word of God and that the Holy Bible instructs that each human life,

which begins at conception, is created in God's image, that God mandates respect for the

sanctity of each human life, and that abortion and abortion-inducing drugs result in the

wrongful taking of a human life.

6. With significant exceptions, all group health plans and health insurance issuers that offer

non-grandfathered group or individual health coverage must provide coverage for certain

preventive services without cost-sharing.  42 U.S.C. § 300gg-13. These services have been

defined by the Health Resources and Services Administration ("HRSA") to include "[a]ll

Food and Drug Administration approved contraceptive methods, sterilization procedures and

patient education and counseling for all women with reproductive capacity." HRSA,

Women's Preventive Services: Required Health Plan Coverage Guidelines,

http://www.hrsa.gov/womensguidelines/ (referred to hereinafter the "HHS Mandate").

7.  In the category of "FDA-approved contraceptives" included in this HHS Mandate are several drugs or devices that may cause the demise of an already-conceived but not-yet- implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after" pill) and "ella" (the so-called "week after" pill) which studies show can function to kill embryos even after they have implanted in the uterus by a mechanism similar to the abortion drug RU-486.

8.  Plaintiff Stewart and Encompass have always maintained objections on the basis of their religious beliefs to supporting either directly or indirectly the use of any drugs or procedures intended for the purposes of inducing an abortion or otherwise terminating an embryo. Such drugs or procedures are referred to collectively herein as "Abortifacients."

9.  Plaintiffs have become aware that many citizens of the United States who hold the same or similar religious beliefs as do the Plaintiffs have, as a result of such religious beliefs, challenged the application of the HHS Mandate to them and to their for-profit businesses.

10. Before 2013, Plaintiffs' health insurance plan excluded coverage of any Abortifacients under their employee health policies.

11. In 2013, Plaintiffs discovered that the new health insurance plan offered by Plaintiff Encompass to its employees and their dependents would be required to cover "FDA-approved contraceptives" under the HHS Mandate. The Plaintiffs did not fully understand until later the extent to which the "FDA-approved contraceptives" mandate included abortion-inducing drugs.

12. Up until this point, Plaintiffs understood that their desire had been honored that no abortifacients had been covered under their health insurance plan.

13. The Plaintiffs voiced their religious objections to Plaintiff Encompass's insurer to providing insurance coverage for abortion-inducing drugs. The Plaintiffs were informed by the insurer that Plaintiff Encompass's insurance plan would cover "FDA-approved contraceptives" and that such "approved contraceptives" indeed included Plan B drugs and ella, drugs that Plaintiffs believe are, in fact, abortion-inducing drugs.

14. The Plaintiffs instructed the insurer to omit coverage of such abortion-inducing drugs from Plaintiff Encompass's employee health insurance plan. The insurer informed the Plaintiffs that the insurer was required to comply with the HHS Mandate and must include such abortion-inducing drugs in Plaintiff Encompass's group health insurance plan.

15. Because there was not time to seek judicial relief, and without any viable option, the Plaintiffs have been forced, at least temporarily, to comply with the HHS Mandate or face the threat of heavy fines and penalties. The Plaintiffs are currently exploring ways of eliminating such objectionable abortion-inducing drugs from their employee health insurance plan.

16. The HHS Mandate also forces the Plaintiffs to fund government-dictated speech, to wit: education and counseling about abortion-inducing drugs, that is directly at odds with the deeply held religious beliefs that they strive to embody in the management and operation of Plaintiff Encompass.

17. The HHS Mandate is a substantial burden on Plaintiffs' religious exercise, and Defendants' refusal to accommodate the religious and conscience objections of the Plaintiffs and other similarly situated individuals and for-profit business entities is highly selective.

18. The Affordable Care Act exempts a wide variety of health insurance plans from the HHS Mandate and, upon information and belief, the Defendants and other government officials have provided thousands of exemptions or waivers from the Affordable Care Act for various

other entities, such as large corporations. But Defendants' HHS Mandate does not exempt Plaintiffs' employee health insurance plan or those of many other religious Americans.

19. Defendants' actions violate Plaintiffs' right freely to exercise religion protected by the RFRA and the Religion Clauses of the First Amendment to the United States Constitution.

20. Defendants' actions also violate Plaintiffs' right to the freedom of speech as secured by the Free Speech Clause of the First Amendment to the United States Constitution.

21. Plaintiffs are now being harmed by Defendants' HHS Mandate. The HHS Mandate by its terms forces Plaintiffs to obtain and pay for insurance coverage of the objectionable items in their 2013 employee health insurance plan and in succeeding year's plans without relief from this Court.

22. Absent immediate injunctive relief from this Court, by virtue of the number of full-time employees employed by Plaintiffs, Plaintiffs must either continue to comply with the HHS Mandate by being illegally and unconstitutionally coerced into violating their sincerely held religious beliefs or face the threat of heavy fines and penalties.

23. The HHS Mandate forces Plaintiffs to fund government-dictated speech concerning education and counseling related to abortion-inducing drugs that is directly at odds with Plaintiffs' deeply held religious beliefs and the moral ethics Plaintiffs strive to embody in Encompass.

24. Defendants' coercion tramples on the freedom of conscience of Plaintiffs and of millions of other Americans who seek to abide by their religious convictions in their lives and in their businesses, to comply with moral imperatives decreed by God in Scripture, and to participate in the public square through their businesses and other activities in a way that is consistent with their deeply held religious beliefs and the ethical imperatives decreed by God.

25. Defendants' actions violate Plaintiffs' right to freely exercise their religion, rights protected by the Religion Clauses of the First Amendment to the United States Constitution, rights secured by the Free Speech Clause of the First Amendment to the United States Constitution, and rights protected by the Religious Freedom Restoration Act.

26. Plaintiffs are faced with immediate, imminent, continuing, and irreparable harm due to Defendants' HHS Mandate which, by its terms, forces Plaintiffs to obtain and pay for insurance coverage for objectionable abortion-inducing drugs and related education and counseling in their employee health insurance plan.

27. Plaintiffs therefore will continue to suffer irreparable harm unless and until this Court enters declaratory and injunctive relief to protect Plaintiffs from Defendants' deliberate attack on Plaintiffs' consciences, religious freedoms, and speech freedoms which result from continued forced compliance with the HHS Mandate.

## PARTIES

28. Plaintiff John F. Stewart is an individual, resident of Oldham County, Kentucky, and is the managing member and sole member of Plaintiff Encompass, a Kentucky limited liability company.

29. Plaintiff Encompass Develop, Design & Construct, LLC. is a Kentucky limited liability company in good standing. Its Articles of Organization were filed with the Kentucky Secretary of State on April 13, 1999 (ID# 0472544), and the business address of Plaintiff Encompass is 105 East Jefferson Street, La Grange, KY 40031.  Its Articles of Organization and the Kentucky Limited Liability Company Act do not prohibit Plaintiff Encompass from exercising religion or limit its exercise of religion.

30. Defendants are appointed officials of the United States government and United States Executive Branch agencies responsible for issuing and enforcing the HHS Mandate.

31. Defendant Kathleen Sebelius (herein "Sebelius") is the Secretary of the United States Department of Health and Human Services (herein "HHS"). In that capacity, she is responsible for the operation and management of HHS. Sebelius is sued in her official capacity only.

32. Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

33. Defendant Thomas Perez (herein "Perez") is the Acting Secretary of the United States Department of Labor (herein "DOL"). In that capacity, he is responsible for the operation and management of DOL. Perez is sued in his official capacity only.

34. Defendant DOL is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

35. Defendant Jacob Lew (herein "Lew") is the Secretary of the United States Department of the Treasury (herein "Treasury"). In that capacity, he is responsible for the operation and management of Treasury. Lew is sued in his official capacity only.

36. Defendant Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the HHS Mandate.

## JURISDICTION AND VENUE

37. This action arises under the Constitution and laws of the United States. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361; jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000bb-1, 5 U.S.C. §

702, and Fed. R. Civ. P. 65; and authority to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988.

38. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e). The Defendants are located in this district.

## FACTUAL ALLEGATIONS

39. Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

### I.      Plaintiffs' Religious Beliefs

40. Plaintiff John Stewart is a believing and practicing evangelical Christian and believes that the Holy Bible is the inspired, inerrant Word of God,  that the Holy Bible instructs that each human life, which begins at conception, is created in God's image, that God mandates respect for the sanctity of each human life, and that abortion and abortion-inducing drugs result in the wrongful taking of a human life.

41. Plaintiff Stewart believes that his religious faith informs his actions as the sole owner and managing member of Encompass as it provides for Christian witness to others. As stated in the Encompass Team Member Handbook, Stewart has chosen to be in business to glorify God and he has established and operates Encompass as a business based on biblical principles.  Thus, Stewart runs Plaintiff Encompass in accord with these sincerely held religious beliefs and has adopted the following explanation, entitled "The 'WHY' of Encompass," as a company vision statement: "*We desire to Glorify God in what we do*." This purpose is the foundation of one of Encompass's key "non-negotiables", which is to make "*decisions based on biblical principles*".

42. The "WHY" of Encompass appears in signage in Encompass's workplace and in its Team Member Handbook, and each employee is introduced to Encompass's "WHY" through a personal meeting with John Stewart.

43. Encompass offers a "doing business with God" voluntary study for its employees that meets bi-weekly.  Stewart leads a weekly focus meeting in the workplace with the Encompass leadership team and chaplain to continually share Stewart's biblically-based business principles.  In addition, Plaintiffs recently launched an initiative called the *Encompass Why Foundation*, which is an internal gathering of key personnel to help shepherd their giving and ministry.

44. One of the religious and moral teachings which Plaintiffs embrace, based on the Holy Bible, is that a preborn child is, from the moment of conception, *i.e.*, a fertilized human embryo, a human being created in the image of God.

45. Based on these religious and moral teachings, Plaintiffs sincerely believe that the termination of the life of a preborn child by, among other ways, abortion-inducing drugs is a sin against God. Therefore, abortion and any abortion-inducing drugs that may terminate the life of a fertilized embryo are morally wrong and objectionable to Plaintiffs.

46. Plaintiff Stewart, as the managing member and sole member of Plaintiff Encompass, is solely responsible for the management and operation of Plaintiff Encompass. He conducts the business operations of Plaintiff Encompass with integrity, in compliance with their pro-life beliefs, and in a manner that honors God.

47. Plaintiff Stewart does not believe that his faith ends upon entry into the market nor does he believe that business, commerce and profitability are in conflict with his faith.

48. Consequently, Plaintiffs believe that it would be immoral and sinful for Plaintiff Encompass to be required to continue to participate in, pay for, facilitate, or otherwise support abortion-inducing drugs and to provide the related education and counseling as is required by the HHS Mandate.

49. Plaintiffs have demonstrated their sincerely held religious beliefs by the way they conduct business and relate to clients and communities in which they work and, among other ways, through a Chaplain position among its team, through long time support of Marriage Education Resource Center, a Christian-based organization that is a division of the LIGHT Center for Family Enrichment, and by contributing significant dollars to Christian and other charitable causes over the last several years both directly and through encouraging and facilitating employee participation in giving programs.

## II.     Plaintiffs' Health Insurance Plan

50. As part of fulfilling their organizational mission and evangelical Christian beliefs and commitments, the Plaintiffs, through Plaintiff Encompass, provide generous health insurance coverage for their employees and their dependents through HUMANA, a health benefits insurer.

51. Plaintiff Encompass employs over 50 full-time employees throughout its various locations. At present, approximately 43 of these employees (and their dependents) are health insurance plan participants.

52. The plan year for Plaintiff Encompass's insurance plan begins on April 1 of each year. The current plan began on April 1, 2013. The insurance plan is thus renewed on April 1 of each year.

53. The Plaintiffs did not discover until shortly before the current plan year began that the health insurance plan offered by Plaintiff Encompass to its employees and their dependents would be required to cover "FDA-approved contraceptives" under the HHS Mandate and that "FDA-approved contraceptives" included both (a) "contraceptives" which prevented conception, to which the Plaintiffs do not object, and (b) Plan B drugs and ella drugs which are, in fact, abortion-inducing drugs, to which the Plaintiffs do vigorously object on religious grounds.

54. The Plaintiffs sought to have their insurer omit coverage of such abortion-inducing drugs from Plaintiff Encompass's insurance plan. The insurer, however, has informed the Plaintiffs that the insurer is required to comply with the HHS Mandate and to include such abortion-inducing drugs in Plaintiff Encompass's group health insurance plan.

55. Plaintiffs have been forced to comply with the HHS Mandate or face the threat of heavy fines and penalties.

56. The Plaintiffs also were or will be forced to fund government-dictated speech that is directly at odds with the deeply held religious beliefs.

## III.    The Affordable Care Act and the HHS Mandate

57.  Under the Affordable Care Act, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

58. On February 15, 2012, the Defendants issued final rules through the Departments of HHS, Labor, and Treasury entitled "Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act," 77 Fed. Reg. 8725-30 that forces Plaintiffs to pay for and otherwise facilitate the insurance coverage and use of abortion-inducing drugs and related education and counseling.

12

59. This final rule was adopted without giving due weight to the tens of thousands of public comments submitted to the Defendants in opposition to the HHS Mandate.

60. With significant exceptions, these final rules require that all group health plans and health insurance issuers that offer non-grandfathered group or individual health coverage must provide coverage for "preventive services," *i.e.,* contraception drugs, abortion-inducing drugs, and education and counseling related to these drugs, all of which must be offered with no cost-sharing by the covered employee. 42 U.S.C. § 300gg-13.

61. These services have been defined by the Health Resources and Services Administration ("HRSA"), based on recommendations from the Institute of Medicine, to include "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity." HRSA, Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines/ (referred to herein as the "HHS Mandate").

62. In the category of "FDA-approved contraceptives" included in this HHS Mandate are several drugs or devices that are not truly "contraceptives" but may cause the demise of an already-conceived but not-yet- implanted human embryo, such as "emergency contraception" or "Plan B" drugs (the so-called "morning after" pill).

63. Another "FDA-approved contraceptive" in this same category is a drug called "ella" (the so-called "week after" pill) which studies show can function to kill human embryos even after the human embryo has implanted in the uterus by a mechanism similar to the abortion drug RU-486.

64. The manufacturers of these abortion-inducing drugs, methods and devices in the category of "FDA-approved contraceptives" indicate on product labeling that these drugs can function to cause the demise of a human embryo.

65. The HHS Mandate also requires group health care plans to pay for the provision of counseling, education, and other information concerning contraception (including devices and drugs such as Plan B and ella that cause early abortion or harm to human embryos) and sterilization for all women beneficiaries who are capable of bearing children.

66. The HHS Mandate applies not only to sponsors of group health plans such as employers who provide self-insurance, but also to issuers of insurance such as the issuer which provides health insurance to Plaintiff Encompass, to wit: HUMANA. Accordingly, Plaintiffs cannot avoid the HHS Mandate by shopping for an insurance plan that accommodates their right of conscience because the Administration has intentionally foreclosed that possibility.

67. The HHS Mandate applies to the first health insurance plan-year beginning after August 1, 2012.

68. The HHS Mandate currently offers the possibility of a narrow exemption to religious employers, but only if such religious employer meets all of the following requirements: (1) the religious employer has the inculcation of religious values as its purpose; (2) the religious employer primarily employs persons who share its religious tenets; (3) the religious employer primarily serves persons who share its religious tenets; and (4) the religious employer is a nonprofit organization described in section 6033(a)(1) and (a)(3)(A)(i) or (iii) of the IRC. Section 6033(a)(3)(A)(i) and (iii) of the IRC refers to churches, their integrated auxiliaries, and conventions or associations of churches, as well as to the exclusively religious activities of any religious order.

69. Furthermore, Plaintiffs do not qualify for the "religious employer" exemption contained in 45 C.F.R. § 147.130(a)(1)(A) and (B).

70. This exemption is not helpful to Plaintiffs because Plaintiff Encompass is not a non-profit entity. Therefore, while the Defendants purport to accommodate the religious beliefs of religious non-profits, these exemptions will not stop the HHS Mandate from continuing to impose its requirements on Plaintiffs' plan year on and after April 1, 2013.

71. As Plaintiffs' health insurance plan does not qualify for grandfathered status, Plaintiffs were mandated to comply with the HHS Mandate's requirement of coverage of abortion-inducing drugs and related education and counseling starting in Plaintiffs' April 1, 2013 plan.

72. The HHS Mandate makes no allowance for the religious freedom of individuals and the for-profit entities they own and operate, including the Plaintiffs, when such individuals object, on sincerely held religious bases, to paying for or providing insurance coverage for abortion-inducing drugs.

73. A for-profit entity cannot freely avoid the HHS Mandate by simply refusing to provide health insurance to its employees, because the Affordable Care Act imposes significant monetary penalties on entities that would so refuse.

74. The exact magnitude of these penalties may vary according to the complicated provisions of the Affordable Care Act, but the fine is approximately $2,000 per employee per year, *i.e.,* estimated to be over $100,000 per year potential fine to Plaintiff Encompass.

75. The Affordable Care Act also imposes monetary penalties if Plaintiffs were to omit abortion-inducing drugs from their health insurance plan.

76. The exact magnitude of these penalties may vary according to the complicated provisions of the Affordable Care Act, but the fine is approximately $100 per day per employee, with

minimum amounts applying in different circumstances *i.e.,* estimated to be over $1,642,500 per year potential fine to Plaintiff Encompass.

77. The imposition of such fines could be a detriment to Plaintiff Encompass' business to the detriment of, among others, its more than 50 employees.

78. If Plaintiffs do not continue to submit to the HHS Mandate they also trigger a range of enforcement mechanisms, including but not limited to civil actions by the Secretary of Labor or by plan participants and beneficiaries, which would include, but not be limited to, relief in the form of judicial orders mandating that Plaintiffs violate their sincerely held religious beliefs and provide coverage for abortion-inducing drugs to which they religiously object.

79. The HHS Mandate imposes no constraint on the government's discretion to grant exemptions to some, all, or none of the organizations meeting the HHS Mandate's definition of "religious employers."

80. Plaintiffs are not "religious" enough under this definition in several respects, including but not limited to because they have purposes other than the "inculcation of religious values," they do not primarily hire or serve Christians, and because Plaintiff Encompass is a for profit entity and not a church, integrated auxiliary of a particular church, convention or association of a church, or the exclusively religious activity of a religious order.

81. The HHS Mandate fails to protect the statutory and constitutional conscience rights of religious Americans like the Plaintiffs.

82.  The HHS Mandate requires that the Plaintiff John Stewart provide coverage for abortion-inducing drugs and to provide compelled speech, i.e., related education and counseling, through Plaintiff Encompass against their consciences and in violation of their religious beliefs and in a manner that is contrary to law.

83. The HHS Mandate constitutes government-imposed coercion on Plaintiffs to either change their sincerely held religious beliefs or continue to violate their sincerely held religious beliefs so as to avoid massive fines and penalties.

84. The HHS Mandate imposes a burden on the Plaintiffs' employee recruitment and retention efforts by creating uncertainty as to whether or on what terms Plaintiff Encompass will be able to offer health insurance different from or beyond the HHS Mandate's effect or whether Plaintiff Encompass and thus Plaintiff John Stewart, as sole member of the LLC, will suffer penalties therefrom.

85. The HHS Mandate can place the Plaintiffs at a competitive disadvantage in their efforts to recruit and retain employees.

86. Plaintiff Stewart has sincere conscientious religious objections to providing coverage for abortion-inducing drugs and related education and counseling through his limited liability company Plaintiff Encompass.

87. The HHS Mandate does not apply equally to all religious adherents or groups.

88. The Affordable Care Act and the HHS Mandate are not generally applicable because they provide for numerous "exemptions" from their rules, many of which have already been granted to other businesses and entities by the Defendants.

89. For instance, the HHS Mandate does not apply to members of a "recognized religious sect or division" that conscientiously object to acceptance of public or private insurance funds. See 26 U.S.C. §§ 5000A(d)(2)(a)(i) and (ii). Plaintiffs do not meet this exemption.

90. In addition, as described above, the HHS Mandate exempts certain churches narrowly considered to be religious employers. Plaintiffs do not meet this exemption.

91. Furthermore, the Affordable Care Act creates a system of individualized "exemptions" because, under the Affordable Care Act's authorization, the federal government has granted discretionary compliance waivers to a variety of for profit businesses, including large businesses, for purely secular or political reasons. Plaintiffs have not been granted any such exemption.

92. The HHS Mandate does not apply to employers with preexisting plans that are "grandfathered." Plaintiffs' plan is not grandfathered under the Affordable Care Act.

93. The HHS Mandate does not apply through the employer mandate to employers having fewer than 50 full-time employees. Plaintiffs, employing more than 50 full-time employees, do not meet this exemption.

94. Unless relief issues from this Court, Plaintiffs will be forced to continue to comply with the HHS Mandate for the April 1, 2013 plan year and thereafter.

95. The HHS Mandate could have a profound and adverse effect on Plaintiffs and how they negotiate contracts and compensate their employees.

96. The HHS Mandate can make it difficult for Plaintiffs to attract quality employees because of uncertainty about health insurance benefits.

97. Any alleged interest Defendants have in providing free FDA-approved abortion-inducing drugs and related education and counseling without cost-sharing by plan participants could be advanced through other, more narrowly tailored mechanisms that do not burden the religious beliefs of Plaintiffs and do not require them to provide or facilitate coverage of such abortion-inducing drugs and related education and counseling through their health insurance plan.

98. Without immediate injunctive and declaratory relief as requested herein, Plaintiffs are suffering and will continue to suffer irreparable harm.

99. Plaintiffs have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### (Violation of the Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb)

100.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

101.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortion-inducing drugs and related education and counseling in Plaintiff Encompass's employee health insurance plan.

102.    When Plaintiffs comply with their sincerely held religious biblical beliefs on abortion-inducing drugs and related education and counseling, they exercise religion within the meaning of the Religious Freedom Restoration Act.

103.    The HHS Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to change or violate their sincerely held religious beliefs.

104.    The HHS Mandate chills Plaintiffs' religious exercise within the meaning of RFRA.

105.    The HHS Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise if they fail and refuse to comply with the HHS Mandate.

106.    The HHS Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about their health insurance benefits caused by the HHS Mandate.

107.    The HHS Mandate furthers no compelling governmental interest and is not narrowly tailored to any compelling governmental interest.

108.    The HHS Mandate is not the least restrictive means of furthering Defendants' stated interests.

109.    The HHS Mandate violates RFRA.

    WHEREFORE, the Plaintiffs pray for the relief set forth below.

## SECOND CLAIM FOR RELIEF
### (Violation of Free Exercise Clause of the First Amendment
to the United States Constitution)

110.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

111.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for

abortion-inducing drugs and related education and counseling in Plaintiff Encompass's

employee health insurance plan.

112.    When Plaintiffs comply with their sincerely held religious beliefs on abortion-inducing

drugs and related education and counseling, they exercise religion within the meaning of the

Free Exercise Clause.

113.    The HHS Mandate is not neutral and is not generally applicable.

114.    Defendants have created categorical "exemptions" and individualized "exemptions" to

the HHS Mandate.

115.    The HHS Mandate furthers no compelling governmental interest.

116.    The HHS Mandate is not the least restrictive means of furthering Defendants' stated

interests.

117.    The HHS Mandate coerces Plaintiffs to change or violate their sincerely held religious

beliefs.

118.    The HHS Mandate chills Plaintiffs' religious exercise.

119.    The HHS Mandate exposes Plaintiffs to substantial fines and/or financial burdens for

their religious exercise.

120.    The HHS Mandate exposes Plaintiffs to substantial competitive disadvantages because of uncertainties about its health insurance benefits caused by the HHS Mandate.

121.    The HHS Mandate imposes a substantial burden on Plaintiffs' religious exercise.

122.    The HHS Mandate is not narrowly tailored to any compelling governmental interest.

123.    By design, Defendants framed the HHS Mandate to apply to some religious Americans but not to others, resulting in discrimination among religions.

124.    Defendants have created exemptions to the HHS Mandate for some religious believers but not others based on characteristics of their beliefs and their religious exercise.

125.    Defendants designed the HHS Mandate, the religious exemption thereto, and the guidance allowances thereto, in a way that makes it impossible for Plaintiffs and other similar religious Americans to comply with their sincerely held religious beliefs.

126.    Defendants promulgated both the HHS Mandate and the religious exemption/allowances with the purpose and intent to suppress the religious exercise of Plaintiffs and others.

127.    The HHS Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

### THIRD CLAIM FOR RELIEF
### (Violation of the Establishment Clause of the
### First Amendment to the United States Constitution)

128.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

129.    The First Amendment's Establishment Clause prohibits the establishment of any religion and/or excessive government entanglement with religion.

130.    To determine whether religious persons or entities like Plaintiffs are required to comply with the HHS Mandate, are required to continue to comply with the HHS Mandate, are

eligible for an exemption or other accommodations, or continue to be eligible for the same, Defendants must examine the religious beliefs and doctrinal teachings of persons or entities like Plaintiffs.

131.    Obtaining sufficient information for the Defendants to analyze the content of Plaintiffs' sincerely held religious beliefs requires ongoing, comprehensive government surveillance that impermissibly entangles Defendants with religion and results in the non-neutral treatment of religions.

132.    The HHS Mandate discriminates among religions and among denominations, favoring some over others, and exhibits a hostility to religious beliefs and/or an excessive entanglement with religion.

133.    The HHS Mandate adopts a particular theological view of what is acceptable moral complicity in provision of abortion-inducing drugs and related education and counseling and imposes it upon all religionists who must either conform their consciences to the HHS Mandate or suffer the penalties.

134.    The HHS Mandate violates Plaintiffs' rights secured to them by the Establishment Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

**FOURTH CLAIM FOR RELIEF**
**(Violation of the Free Speech Clause of the First Amendment**
**to the United States Constitution)**

135.    Plaintiffs reallege all matters set forth above and incorporate them herein by reference.

136.    Defendants' requirement of knowingly providing insurance coverage for abortion-inducing drugs pursuant to the HHS Mandate also requires Plaintiffs to provide related

education and counseling, i.e., expressive speech, and thus forces Plaintiffs to speak in a manner contrary to their religious beliefs.

137.   Defendants have no narrowly tailored compelling interest to justify this compelled speech.

138.   The HHS Mandate therefore violates Plaintiffs' rights secured to them by the Free Speech Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## FIFTH CLAIM FOR RELIEF
### (Selective enforcement of Affordable Care Act Unconstitutional)

139.   Since the enactment of the Affordable Care Act the Defendants on one or more occasions have announced delays in the implementation of certain provisions of the Affordable Care Act.

140.   On or about July 2, 2013 Mark Mazur by and through the Department of the Treasury via a memorandum entitled *Continuing to Implement the ACA in a Careful, Thoughtful Manner* announced the delayed implementation of the Affordable Care Act provisions which require employers to pay a fine for non-compliance with the Act  "Employer Mandate."

141.   On or about August, 12, 2013 the Defendants through the Department of Labor announced a one year grace period in the implementation of caps on the out of pocket costs which benefits insurers for that period.

142.   Congress did not in the enactment of the Affordable Care Act provide for or allow discretion by which the Defendants could select which provisions they would enforce nor empower them to exclude certain parties from such enforcement.

143.   The delays or allowances made by Defendants purposely exclude Plaintiffs and others who seek exclusion based upon religious beliefs and provide further evidence of the Defendants animus towards religious groups.

144.   The Defendants actions amount to selective enforcement of the Affordable Care Act.

145.   The delay further provides evidence that granting of injunctive relief to the Plaintiff's is necessary to restore the balance of equities and prevent Defendants from utilizing portions of the Affordable Care Act to impose or forward their own religious beliefs on the Plaintiffs and others while excusing enforcement on parties for political or other reasons.

146.   The Defendants actions in selectively enforcing portions of the Affordable Care Act violate Article II Sec. 3 of the United States Constitution which requires the Executive Branch to faithfully enforce the Laws of the United States.

147.   The Defendants selective enforcement of certain provisions of the Affordable Care Act further violate Article 1, Section 7, Clauses 2 and 3 of the United States Constitution.

148.   Finally, the Defendants' Actions violate Plaintiffs' rights under the Fifth Amendment to the United States Constitution requiring due process and equal protection under the laws as extended to the federal government in *Bolling v Sharpe*, 347 U.S. 497 (1954).

149.   Defendants are not empowered by the Affordable Care Act to selectively enforce or not enforce the Act and therefore the Defendants current actions in delaying certain provisions are both unconstitutional and render the Affordable Care Act and the provisions requiring Plaintiff's and their insurer or administrator to provide Abortifacients void.

WHEREFORE, the Plaintiffs pray for the relief set forth below.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

A.      That this Court enter a judgment declaring the HHS Mandate and its application to Plaintiffs and others similarly situated but not before the Court to be an unconstitutional violation of their rights protected by RFRA, the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the United States Constitution, and the Due Process Clause of the Fifth Amendment to the United States Constitution, and therefore invalid in any way applicable to them;

B.      That this Court enter a preliminary and a permanent injunction prohibiting Defendants from applying the HHS Mandate to Plaintiffs and others similarly situated but not before the Court in a way that substantially burdens the religious beliefs of Plaintiffs or any other person in violation of RFRA and the Constitution, and prohibiting Defendants from continuing to illegally discriminate against Plaintiffs and others not before the Court by requiring them to provide health insurance coverage for abortion-inducing contraception drugs, abortifacient drugs, and related education and counseling to their employees;

C.      That this Court award Plaintiffs their court costs and reasonable attorney's fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. § 1988) or other applicable law;

D.      That this Court grant such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a jury on all issues so triable.

Respectfully submitted this 27th day of November, 2013.

*Attorneys for Plaintiffs*:

  *s/ John R. Garza*
John R. Garza
Garza, Regan & Associates, P.C.
Garza Building

17 W. Jefferson Street, Suite 100
Rockville, MD 20850
(301) 340-8200
jgarza@garzanet.com

Bryan H. Beauman*
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1400
Lexington, KY 40507
859-255-8581
bbeauman@sturgillturner.com

and

Clinton J. Elliott*
Attorney & Counselor at Law
P.O.Box 52
Crestwood, KY 40014
502-931-2251
clint@legalsolutionsky.com

*pro hac vice motions forthcoming

VERIFICATION OF COMPLAINT
PURSUANT TO 28 U.S.C. § 1746

**VERIFICATION OF COMPLAINT**

    I declare under penalty of perjury that I have personal knowledge of the facts asserted herein and do declare that the foregoing statements are true and correct to the best of my information, knowledge and belief.
Executed on November  27, 2013.

_____
John F. Stewart, Individually and as
Managing Member of Encompass Design,
Develop and Construct LLC

COMMONWEALTH OF KENTUCKY    )
                                      ) SS.
COUNTY OF JEFFERSON              )

    Subscribed and sworn to before me this 26th day of November, 2013 by John Stewart.

My Commission expires: _9- 30 · 14_ .

_Beverly F Farrell_
Notary Public, State at Large

BEVERLY F. FARRELL
NOTARY PUBLIC
NID # 427285
STATE AT LARGE, KENTUCKY